UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAITLIN CHALMERS,<br><br>    Plaintiff,<br><br>    v.<br><br>BRIAN CAYNE,<br><br>    Defendant. | Case No. 25-cv-05083-JSC<br><br>**ORDER RE: DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 10 |

Plaintiff sues Brian Cayne arising from the dissolution of their romantic relationship. (Dkt. No. 1-1.)[1] Now pending before the Court is Mr. Cayne's motion for judgment on the pleadings. (Dkt. No. 10.) Having carefully considered the parties' submissions, and with the benefit of oral argument on October 2, 2025, the Court GRANTS Mr. Cayne's motion for judgment on the pleadings. California Civil Code Sections 43.4 and 43.5 bar Plaintiff's claims for breach of contract, breach of implied contract, fraud, promissory estoppel, and negligent misrepresentation. Plaintiff does not allege sufficient facts to state claims for dissolution of partnership and community assets, breach of fiduciary duty, intentional infliction of emotional distress, or conversion. And Plaintiff's claim for imposition of constructive trust fails because it is an equitable remedy, not a cause of action.

## BACKGROUND

Plaintiff, a Canadian citizen, and Mr. Cayne, a California resident, began a romantic relationship in fall 2021. (Dkt. No. 1-1 ¶¶ 3, 5, 6.) At that time, Plaintiff lived with her two-year-old son in California and earned approximately $300,000 annually in her job. (*Id.* ¶ 6.) Plaintiff

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

alleges Mr. Cayne asked her to give up her homes in California and Canada to live with him, and to leave her job to be a stay-at-home parent to her son and his son. (*Id.* ¶ 8.) In return, Mr. Cayne allegedly promised Plaintiff he would support her "indefinitely," purchase a home they would jointly own, share ownership and profits of any future investments, and allow her to "use whatever funds she needed for anything she wanted." (*Id.* ¶¶ 8, 20.) When Plaintiff hesitated, Mr. Cayne "assured [Plaintiff] he loved her, that he wanted to marry her, and that she could trust him about the financial arrangement he was offering." (*Id.* ¶ 8.) As assurance Mr. Cayne was "standing by his promises," he placed $100,000 in her bank account. (*Id.*)

By around March 2022, Plaintiff had sold her home in Canada, given up her apartment in California, left her job, "got rid of most of her belongings," and moved in with Mr. Cayne. (*Id.* ¶ 9.) Plaintiff and Mr. Cayne "were engaged and he gave her an engagement ring." (*Id.*) Plaintiff alleges Mr. Cayne's behavior then "turned dark and controlling." (*Id.* ¶ 10.) Although Plaintiff needed rest because she was undergoing cancer treatment, Mr. Cayne would wake her up in the middle of the night and "berate her and tell her that she was selfish if she protested." (*Id.*) Mr. Cayne pressured her to drink, allowed her car to be towed and told her not to retrieve it, got upset if she left home without him, did not want her to speak to her friends, and searched her phone. (*Id.*) Eventually, Mr. Cayne decided to purchase a home in Canada; he sent Plaintiff and her son to Canada, where he "was to arrive shortly thereafter." (*Id.* ¶ 11.) However, around July 27, 2022, Mr. Cayne informed Plaintiff "he was breaking off the relationship." (*Id.* ¶¶ 11, 19.)

Plaintiff sued Mr. Cayne in California Superior Court asserting claims for breach of oral contracts for property and support, breach of implied contract, dissolution of partnership and community assets, breach of fiduciary duty, fraud, promissory estoppel, negligent misrepresentation, intentional infliction of emotional distress, conversion, and imposition of constructive trust. (*Id.* at 9-28.) Plaintiff sought at least $500,000 in general damages, at least $8,000,000 in special damages, exemplary and punitive damages, and other relief. (*Id.* at 28-29.) Mr. Cayne removed the case to this Court based on diversity jurisdiction and answered the

complaint.[2]  (Dkt. Nos. 1, 3.)

Mr. Cayne now moves for judgment on the pleadings.  (Dkt. No. 10.)

**DISCUSSION**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (citation omitted).  "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a Rule 12(b)(6) motion to dismiss." *Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corp.*, 782 F. Supp. 3d 836, 850 (N.D. Cal. 2025) (citing *Dworkin v. Hustler Mag., Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).  So, when considering a motion under Federal Rule of Civil Procedure 12(c), the Court "must accept the facts as pled by the nonmovant." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1053 (9th Cir. 2011) (citation omitted).

**I.  BREACH OF ORAL CONTRACTS FOR PROPERTY AND SUPPORT, BREACH OF IMPLIED CONTRACT, FRAUD, PROMISSORY ESTOPPEL, AND NEGLIGENT MIS REPRESENTATION (CAUSES OF ACTION I, II, III, VI, VII, AND VIII)**

**A.  California Civil Code Sections 43.4 and 43.5**

At common law, a breach of promise of marriage action "held out the promise of 'a large assortment of tort and contract damages' in addition to any actual property with which the plaintiff may have parted." *See Askew v. Askew*, 22 Cal. App. 4th 942, 960 (1994).  However, "to eliminate [this] class of lawsuits which were frequently used for extortion, [and] which promoted fraud and perjury and encouraged marriages motivated by fear of a lawsuit instead of love," the California Legislature enacted Civil Code Section 43.5.  *See Boyd v. Boyd*, 228 Cal. App. 2d 374, 377 (1964).  Under Section 43.5, "[n]o cause of action arises for . . . breach of promise of marriage." Cal. Civ. Code § 43.5(d).  While Section 43.5 "obviously prohibited (and still

---

[2] While the complaint alleges Mr. Cayne is a California resident, his declaration in support of removal demonstrates he was a Missouri resident at the time the lawsuit was filed.  (Dkt. No. 1-1 ¶ 3; Dkt. No. 1-2 ¶ 2.)

1    prohibits) lawsuits seeking contract damages for the emotional pain of a broken engagement," it

2    remained unclear "whether it also prohibited tort lawsuits based on fraudulent or deceitful

3    promises to marry or live as a married couple." *Askew*, 22 Cal. App. 4th at 954.  So, the

4    California Legislature enacted Section 43.4, which states, "A fraudulent promise to marry or

5    cohabit after marriage does not give rise to a cause of action for damages."  Cal. Civ. Code § 43.4.

6         Sections 43.4 and 43.5 bar Plaintiff's claims for breach of oral contract for property and

7    support, breach of implied contract, promissory estoppel, fraud, and negligent misrepresentation.

8    First, by eliminating causes of action for "breach of promise of marriage," Section 43.5 expressly

9    prevents Plaintiff's breach of oral contract and breach of implied contract claims.  *See Askew*, 22

10   Cal. App. 4th at 954.  Plaintiff alleges Mr. Cayne induced her to give up her home and belongings

11   and leave her job by "assur[ing] her that he loved her, that he wanted to marry her, and that she

12   could trust him about the financial arrangement he was offering," and when she moved in with Mr.

13   Cayne, they "were engaged and [he] gave her an engagement ring."  (Dkt. No. 1-1 ¶¶ 8-9.)  Mr.

14   Cayne's breach of a "commitment of economic support" falls within the scope of Section 43.5's

15   prohibition.  *See Boyd*, 228 Cal. App. 2d at 378.  Furthermore, as "a subset of a theory of recovery

16   based on a breach of contract," Plaintiff's promissory estoppel claim is also barred by Section

17   43.5.  *See Estate of Bride by and through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1177-78 (9th

18   Cir. 2024) (quotation marks and citation omitted).

19        Section 43.4 bars Plaintiff's fraud and negligent misrepresentation claims.  Plaintiff alleges

20   Mr. Cayne promised to "share real estate, purchase a luxury vehicle and support her through

21   retirement" and "falsely represented" he would fulfill such promises, with which he never

22   intended to comply.  (Dkt. No. 1-1 ¶¶ 47, 51, 68.)  Because shared property and financial support

23   are a "mutual assumption of [] marital rights, duties and obligations which are usually manifested

24   by married people," Section 43.4 prevents Mr. Cayne's promises from providing the basis for a

25   fraud or negligent misrepresentation claim.  *See Boyd,* 228 Cal. App. 2d at 381 (explaining Section

26   43.4 "abolish[es] suits based upon a fraudulent promise to cohabit after marriage" because it is a

27   "mutual assumption" of marriage); *see also In re Marriage of Buckley*, 133 Cal. App. 3d 927, 933

28   (1982) ("[A]ctions alleging fraudulent inducement into a void marriage are among actions

4

prohibited by Civil Code section 43.4.").

Plaintiff's argument her agreement with Mr. Cayne did not depend on a promise of marriage is unavailing. First, drawing all reasonable inferences from the complaint's allegations in Plaintiff's favor, the agreement was not independent of Mr. Cayne's promise to marry her, since Plaintiff admits Mr. Cayne alleviated her hesitations by "assur[ing] her . . . that he wanted to marry her," and she moved in around when they became engaged. (Dkt. No. 1-1 ¶¶ 8-9.) *See Richelle L. v. Roman Catholic Archbishop*, 106 Cal. App. 4th 257, 267 (2003) ("The statute creates a blanket immunization from liability from the conduct it protects unless such conduct 'breaches a duty of care *independent* of the causes of action barred therein.'" (citation omitted)). Furthermore, as the court explained in *Boyd v. Boyd*, 228 Cal. App. 2d 374 (1964), marriage "comprehends an array of interrelated commitments and expectations," including "mutual affection, companionship, sexual relations[,] the traditional distribution of domestic activities [and] [t]he notion of financial support," and Section 43.5 encompasses any "lawsuits in which one party or the other seeks financial compensation for loss of this group of expectations and commitments." *Id.* at 378. Because Plaintiff seeks damages for loss of "commitments and expectations" traditionally accompanying marriage, including financial support and shared property, Plaintiff's losses fall within the scope of Sections 43.4 and 43.5.

So, Sections 43.4 and 43.5 bar Causes of Action I, II, III, VI, VII, and VIII.

### B.     Recovery Under *Marvin*

Even if Section 43.5 does not encompass Plaintiff's contract claims, Plaintiff fails to plausibly allege contract claims under *Marvin v. Marvin*, 18 Cal. 3d 660 (1976). In *Marvin*, the California Supreme Court held Section 43.5 does not extend to "pooling and support agreements not part of or accompanied by promise of marriage." *Id.* at 674. Therefore, an implied agreement between unmarried cohabitating parties to share assets is enforceable so long as the agreement "does not rest upon illicit meretricious consideration." *Id.* Recovery under *Marvin* often "requires a showing of a stable and significant relationship arising out of cohabitation." *Bergen v. Wood*, 14 Cal. App. 4th 854, 857 (1993); *see also Cochran v. Cochran*, 89 Cal. App. 4th 283, 291 (2001) (refusing to decide whether recovery always requires cohabitation). Courts consider several

5

factors when determining whether a relationship was sufficiently stable or significant to support a *Marvin* claim, including (1) the length of the relationship, (2) whether the parties raised children together, (3) whether they held themselves out to the world as married, and (4) whether they jointly owned property and pooled assets. *See Cochran*, 89 Cal. App. 4th at 291-92.

Based on the complaint's allegations, Plaintiff's relationship with Mr. Cayne is not sufficiently stable or significant to warrant recovery under *Marvin*. Their relationship lasted less than one year, from fall 2021 through July 2022, and they only cohabitated between March 2022 and July 2022. *See Smith v. Carr*, No. CV 12-3251 CAS (JCGx), 2012 WL 2343305, at *6 (C.D. Cal. June 18, 2012) (finding three-year relationship and 11 months of cohabitation insufficient); *see also Cochran*, 89 Cal. App. 4th at 291 (finding 17-year relationship with cohabitation two-to-four days each week sufficient); *Alderson v. Alderson*, 180 Cal. App. 3d 450, 461 (1986) (finding 12-year relationship sufficient). Plaintiff also does not allege she and Mr. Cayne held themselves out as married, jointly owned property, or pooled assets. *See Cochran*, 89 Cal. App. 4th at 291-92 (noting parties "held themselves out to the world as husband and wife" and jointly owned home); *Alderson*, 180 Cal. App. 3d at 461 (noting parties "held themselves out . . . as husband and wife" and "pooled their financial resources and then drew upon the same to purchase" properties with joint title). So, Plaintiff does not plausibly allege breach of contract under a *Marvin* theory.

Plaintiff's reliance on *Byrne v. Laura*, 52 Cal. App. 4th 1054 (1997) is misplaced. Unlike Plaintiff, who was engaged to Mr. Cayne, the *Byrne* appellant repeatedly refused the decedent's marriage proposals, so their agreement remained independent of any promise to marry. *Id.* at 1059-61. The appellant's and decedent's relationship also lasted nearly six years, from August 1987 until the decedent's death on June 29, 1993; they cohabitated from January 1988 until the decedent's death; and the appellant "contributed all of her earnings toward the household." *Id.* In *Byrne*, the yearslong relationship, cohabitation, and pooled assets demonstrated a stable and significant relationship sufficient for a *Marvin* claim, but Plaintiff does not allege those elements here. So, the Court dismisses Causes of Action I, II, III, VI, VII, and VIII.

## II. DISSOLUTION OF PARTNERSHIP AND COMMUNITY ASSETS (CAUSE OF ACTION IV)

"[T]he association of two or more persons to carry on as coowners a business for profit forms a partnership, whether or not the persons intend to form a partnership." Cal. Corp. Code § 16202(a); *see also Enea v. Superior Court*, 132 Cal. App. 4th 1559, 1564 (2005) ("The defining characteristic of a partnership is the combination of two or more persons to jointly conduct business." (citation omitted)). An "essential element" of a partnership is the "right of joint participation in the management and control of the business." *Kaljian v. Menezes*, 36 Cal. App. 4th 573, 586 (1995). "Absent such right, the mere fact that one party is to receive benefits in consideration of services rendered or for capital contribution does not, as a matter of law, make him a partner." *Id.*; *see also* Cal. Corp. Code § 16202(c) ("Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, [] part ownership . . . [or] [t]he sharing of gross returns does not by itself establish a partnership."). A partnership "may be formed orally or assumed to have been organized from a reasonable deduction from the acts and declarations of the parties." *Weiner v. Fleischman*, 54 Cal. 3d 476, 482-83 (1991) (cleaned up).

Plaintiff alleges she and Mr. Cayne "entered into the business partnership agreement" to share assets and property. (Dkt. No. 1-1 ¶¶ 38-39.) However, while Plaintiff alleges Mr. Cayne promised to "support her and purchase a home that she would own equally and jointly," and that she "could use whatever funds she needed," she does not allege she had a right to manage and control any assets or property. (*Id.* ¶ 8.) Instead, Plaintiff alleges Mr. Cayne proposed they "pool[] assets," and he "would manage those assets." (*Id.* ¶ 42.) Because Plaintiff does not allege Mr. Cayne agreed to her joint management and control, or acted so as to reasonably suggest such agreement, Plaintiff has not alleged the existence of a partnership. *See In re YouTube Trafficking Litig.*, No. 23-cv-05523-JD, 2025 WL 1745759, at *1 (N.D. Cal. June 24, 2025) (rejecting partnership allegation without plausible allegations parties "participated in the 'management' of one another's business"). Plaintiff argues courts allowing recovery under *Marvin* can "find[] an implied contract or implied agreement of partnership." *Nevel v. Nevel*, 154 Cal. App. 3d 132, 138 (1984). But Plaintiff has not plausibly pled a *Marvin* claim, so there is no implied partnership agreement.

7

Because Plaintiff fails to allege the existence of a partnership, she cannot state a claim for dissolution of partnership. The Court therefore dismisses Cause of Action IV.

### III. BREACH OF FIDUCIARY DUTY (CAUSE OF ACTION V)

"The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." *Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1086 (1995) (citation omitted). "[F]iduciary duties are either imposed by law or are undertaken by agreement." *Maglica v. Maglica*, 66 Cal. App. 4th 442, 447 (1998). A confidential relationship does not impose fiduciary duties by agreement when parties "repose[] trust and confidence in each other . . . in the absence of an act creating or establishing a fiduciary relationship known to law." *City Sols., Inc. v. Clear Channel Commc'ns, Inc.*, 201 F. Supp. 2d 1048, 1050 (N.D. Cal. 2002) (quotation marks and citation omitted).

Plaintiff does not plausibly allege Mr. Cayne owed her a fiduciary duty. Although marriage imposes fiduciary duties by law, "the fact that [Plaintiff] and Mr. Cayne remained unmarried during their relationship is dispositive" of any argument fiduciary duties arose from the parties' marriage. *Maglica*, 66 Cal. App. 4th at 448. As to whether Mr. Cayne undertook fiduciary duties by agreement, Plaintiff alleges Mr. Cayne "proposed" they "pool assets" for his management, and she "gave up her assets" based on his proposal. (Dkt. No. 1-1 ¶ 42.) She does not, however, allege she *entrusted* her assets to him. *See Vai v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 56 Cal. 2d 329, 338 (1961) ("The key factor in the existence of a fiduciary relationship lies in control by a person over the property of another.").

Plaintiff argues her partnership with Mr. Cayne created a fiduciary relationship which obligated Mr. Cayne "to share risks and benefits and to carry out the enterprise with the highest good faith toward [her]." *See Enea*, 132 Cal. App. 4th at 1564 ("Partnership is a fiduciary relationship." (quotation marks and citation omitted)). However, as explained above, Plaintiff does not plausibly allege a partnership existed from which fiduciary duties might arise.

Because Plaintiff fails to allege the existence of a fiduciary duty, the Court dismisses Cause of Action V.

## IV. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (CAUSE OF ACTION IX)

An intentional infliction of emotional distress claim requires: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (quotation marks and citation omitted).

To be "outrageous," the conduct must be so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* at 1051 (quotation marks and citation omitted). "Liability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* (quotation marks and citation omitted). Plaintiff alleges Mr. Cayne's "defrauding Plaintiff, converting partnership and community assets, refusing to take actions to preserve the partnership and community assets in order to punish Plaintiff, ousting the Plaintiff, deceptively getting her to give up her job, condominium and apartment, abusing her during her cancer treatment, [and] hacking her phone" were outrageous. (Dkt. No. 1-1 ¶ 76.) Ultimately, because "reasonable minds could differ as to whether the conduct alleged here by [Mr. Cayne] was sufficiently extreme and outrageous," the Court will not make that determination as a matter of law. *Tekle v. United States*, 511 F.3d 839, 856 (9th Cir. 2007).

However, Plaintiff does not include facts supporting her allegation she "suffer[ed] severe emotional and mental distress." (Dkt. No. 1-1 ¶ 78). *See Campbell v. Feld Ent. Inc.*, Nos. 12-cv-4233-LHK, 13-cv-0233-LHK, 2014 WL 1366581, at *12 (N.D. Cal. Apr. 7, 2014) (dismissing claim alleging "severe stress and anxiety, depression, and loss of sleep" for failure to allege how injuries were "severe"); *Schultz v. Stericycle, Inc.*, No. CV F 13-1244-LJO MJS, 2013 WL 4776517, at *8 (E.D. Cal. Sept. 4, 2013) (dismissing claim lacking "facts to support" allegations of "pain and suffering, extreme and severe mental anguish, and emotional distress"). Plaintiff also does not allege any facts supporting her allegation Mr. Cayne "intended to . . . cause severe emotional distress" or acted with "reckless disregard for [that] possibility." (Dkt. No. 1-1 ¶¶ 76, 78.)

9

1   Because Plaintiff has failed to allege facts supporting all elements of a claim for intentional infliction of emotional distress, the Court dismisses Cause of Action IX.

## V.  CONVERSION (CAUSE OF ACTION X)

"Conversion is the wrongful exercise of dominion over the property of another." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) (quoting *Oakdale Vill. Grp. v. Fong*, 43 Cal. App. 4th 539, 543 (1996)).  "The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Id.* (citation omitted).

Plaintiff does not oppose Mr. Cayne's motion with respect to her conversion claim.  The Court also agrees with Mr. Cayne's argument Plaintiff's assertions he "kept and concealed," and "refused" to return Plaintiff's belongings are conclusory and so do not sufficiently plead conversion.  (Dkt. No. 1-1 ¶¶ 82-83.)  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also White v. Anywhere Real Est. Inc.*, No. 22-CV-4557-GW-MAAX, 2023 WL 9065954, at *6 (C.D. Cal. Nov. 9, 2023) (allegations defendant still controlled plaintiff's property were "unexplained, conclusory assertions [which] do not meet the requirements for pleading a conversion claim"); *La Tech & Consulting, LLC v. Am. Express Co.*, No. SA CV-22-01213-DOC-KES, 2022 WL 3699968, at *4 (C.D. Cal. Aug. 9, 2022) (allegation defendant "wrongfully exercise[d] control over Plaintiff's funds" was conclusory).  Not only does Plaintiff fail to allege facts plausibly supporting her allegations Mr. Cayne received, kept, and concealed her belongings, but some of Plaintiff's factual allegations are inconsistent.  For example, Plaintiff alleges Mr. Cayne received and kept her furniture and other household items but also states she "disposed of" them.  (Dkt. No. 1-1 ¶ 82.)  Plaintiff similarly lists her car as converted property but also alleges it was towed.  (*Id.* ¶¶ 10, 82.)

Because Plaintiff has not alleged facts to support her conversion claim, the Court dismisses Cause of Action X.

**VI.    IMPOSITION OF CONTSTRUCTIVE TRUST (CAUSE OF ACTION XI)**

Plaintiff asks to impose a constructive trust upon Mr. Cayne's assets in Plaintiff's favor. Plaintiff does not dispute a constructive trust is an equitable remedy, not a cause of action. *See Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 908-09 (9th Cir. 2010) ("A constructive trust is an equitable remedy that compels the transfer of wrongfully held property to its rightful owner." (citation omitted)); *Kim v. Westmoore Partners, Inc.*, 201 Cal. App. 4th 267, 277 n. 4 (2011) (noting cause of action for "Imposition of Constructive Trust" was a remedy, not a cause of action).

So, the Court dismisses Cause of Action XI without leave to amend.

### CONCLUSION

For the reasons stated above, the Court GRANTS Mr. Cayne's motion for judgment on the pleadings. "If a court grants a motion for judgment on the pleadings, leave to amend should be granted unless such amendment would be futile." *SEC v. Payward, Inc.*, 763 F. Supp. 3d 901, 907 (N.D. Cal. 2025) (citation omitted). The Court therefore grants Plaintiff leave to amend her complaint except as to Plaintiff's claim for imposition of a constructive trust. Plaintiff may not add additional claims or defendants without first seeking leave of court. The deadline to file an amended complaint is **October 24, 2025**. If Plaintiff does not file an amended complaint by that date, judgment will be entered in Mr. Cayne's favor on all claims.

This Order disposes of Docket No. 10.

**IT IS SO ORDERED.**

Dated: October 3, 2025

_____
JACQUELINE SCOTT CORLEY
United States District Judge

11