UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAITLIN CHALMERS, | Case No. 25-cv-05083-JSC |
| Plaintiff, | |
| v. | **ORDER RE: DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT** |
| BRIAN CAYNE, | Re: Dkt. No. 25 |
| Defendant. | |

Plaintiff sues Defendant for damages arising after the dissolution of their romantic relationship. (Dkt. No. 21.)[1] The Court previously granted Defendant's motion for judgment on the pleadings and allowed Plaintiff leave to amend her complaint except as to her claim for imposition of a constructive trust. (Dkt. No. 20.) Now pending before the Court is Defendant's motion to dismiss Plaintiff's amended complaint. (Dkt. No. 25.) Having carefully considered the parties' submissions, the Court concludes oral argument is not required, *see* N.D. Cal. Civ. L.R. 7-1(b), and VACATES the January 29, 2026 hearing. The Court GRANTS Defendant's motion to dismiss Plaintiff's breach of contract, breach of implied contract, promissory estoppel, and negligent misrepresentation claims, but DENIES Defendant's motion to dismiss Plaintiff's intentional infliction of emotional distress claim. California Civil Code Section 43.5 bars Plaintiff's breach of contract, breach of implied contract, and promissory estoppel claims, and Plaintiff does not oppose Defendant's motion to dismiss her negligent misrepresentation claim. However, Plaintiff plausibly alleges the elements of an intentional infliction of emotional distress claim.

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

**BACKGROUND**

## I.    AMENDED COMPLAINT ALLEGATIONS

Plaintiff, a Canadian citizen, and Defendant, a California resident, began a "romantic, intimate, and personal relationship" in fall 2021.  (Dkt. No. 21 ¶¶ 3, 5, 6.)  At that time, Plaintiff lived with her son in California and earned approximately $300,000 plus benefits annually in her job.  (*Id.* ¶ 6.)  "The parties developed a close bond and their love grew," and Defendant asked Plaintiff to live with him, give up her job and her homes in California and Canada, and be a stay-at-home parent to her son and his son and "his life partner."  (*Id.* ¶ 8.)  "He told her that [] in return, he would support her indefinitely and that she would be a co-owner of a home that he would purchase for the both of them."  (*Id.*)  When Plaintiff "raised concern about where she would get spending money," Defendant "promised her that he would make sure that she could use whatever funds she needed for anything she wanted."  (*Id.*)  "[Plaintiff] was hesitant, but [Defendant] assured her that he loved her . . . and that she could trust him about the financial and cohabitating agreement he was offering."  (*Id.*)  "Based upon his representations, [Plaintiff] accepted his terms."  (*Id.*)

Plaintiff moved in with Defendant between January and March 2022.  (*Id.* ¶ 9.)  She sold her home in Canada, gave up her apartment in California, "got rid of most of her belongings," and left her job.  (*Id.*)  When she "expressed her concern and hesitation" about giving up these things, Defendant "assured her that she did not have to worry, that he wanted to be in a committed relationship and that he had received a $27 million bonus and that she did not have to worry about finances."  (*Id.*)  "Plaintiff did do all of the things he asked:" "cared for his son, cooked, fed, helped clothe[], helped him with school projects, played and entertained him, arranged medical appointments, social calendars and shuttled [him] to and from extracurriculars and appointments;" "cared for the home in the particular ways [Defendant] desired;" "ran errands for [Defendant] and his son;" and "helped [Defendant] with property searches for the real estate that he wanted to purchase."  (*Id.*)  Defendant "referred to [Plaintiff] and her son as his wife and son in official correspondence," including in a letter related to the potential purchase of a home in Carmel.  (*Id.*)

While cohabitating, Plaintiff and Defendant "lived together every single day and night

2

continuously, without ever leaving each other." (*Id.* ¶ 10.) Their relationship was "stable, as the parties lived together as committed partners," and they "planned their futures together, and executed those plans towards their common goal of a shared life together." (*Id.*) "During their relationship, [Defendant] did not want the parties to be separated." (*Id.* ¶ 11.) Defendant "did not want [Plaintiff] to leave the home without informing him where she was going," convinced her to change oncologists while undergoing cancer treatment, disrupted her sleep, and searched her phone. (*Id.*) "He told her that he loved her, that he needed her and that he wanted to be sure she was safe." (*Id.*)

While on vacation, Defendant decided they should purchase a home in Canada and live there. (*Id.* ¶ 12.) After making a down payment on a home in Canada, Defendant "sent Plaintiff and her son" there and "then informed Plaintiff that he was breaking off the relationship." (*Id.*) "Plaintiff and her son were stranded without any way to return to California, with no job, no home, no car, [and] no childcare." (*Id.*)

## II.    PROCEDURAL HISTORY

Plaintiff sued Defendant in state court asserting claims for breach of oral contracts for property and support, breach of implied contract, dissolution of partnership and community assets, breach of fiduciary duty, fraud, promissory estoppel, negligent misrepresentation, intentional infliction of emotional distress, conversion, and imposition of constructive trust. (Dkt. No. 1-1 at 9-29.) Defendant removed the case to this Court based on diversity jurisdiction and answered the complaint. (Dkt. Nos. 1, 3.)[2] He then moved for judgment on the pleadings. (Dkt. No. 10.)

The Court granted Defendant's motion for judgment on the pleadings. (Dkt. No. 20.) The Court held California Civil Code Sections 43.4 and 43.5, which prohibit causes of action arising from a breach of a promise or fraudulent promise to marry, barred Plaintiff's claims for breach of contract, breach of implied contract, fraud, promissory estoppel, and negligent misrepresentation. (*Id.* at 3-6.) Plaintiff also failed to allege a sufficiently stable and significant relationship to state

---

[2] While the amended complaint alleges Defendant is a California resident, his declaration in support of removal demonstrates he was a Missouri resident at the time the lawsuit was filed. (Dkt. No. 21 ¶ 3; Dkt. No. 1-2 ¶ 2.)

United States District Court
Northern District of California

contract claims under *Marvin v. Marvin*, 18 Cal. 3d 660 (1976). (*Id.* at 5-6.) In addition, Plaintiff had not included sufficient facts to plausibly allege claims for dissolution of partnership and community assets, breach of fiduciary duty, intentional infliction of emotional distress, or conversion. (*Id.* at 7-10.) And her claim for imposition of constructive trust failed because it is an equitable remedy, not a cause of action. (*Id.* at 11.) The Court gave Plaintiff leave to file an amended complaint except as to her claim for imposition of a constructive trust. (*Id.*)

Plaintiff filed an amended complaint asserting claims for (1) breach of oral contract for property, (2) breach of contract for support, (3) breach of implied contract, (4) promissory estoppel, (5) negligent misrepresentation, and (6) intentional infliction of emotional distress, and seeking at least $8,500,000 in damages and other relief. (Dkt. No. 21.) Defendant now moves to dismiss the amended complaint. (Dkt. No. 25.)

<strong>DISCUSSION</strong>

**I.    BREACH OF CONTRACT, BREACH OF IMPLIED CONTRACT, AND PROMISSORY ESTOPPEL CLAIMS (CAUSES OF ACTION I, II, III, AND IV)**

**A.    Section 43.5**

As the Court previously explained, at common law, a breach of promise of marriage action "held out the promise of 'a large assortment of tort and contract damages' in addition to any actual property with which the plaintiff may have parted." *See Askew v. Askew*, 22 Cal. App. 4th 942, 960 (1994). So, "to eliminate [this] class of lawsuits which were frequently used for extortion, [and] which promoted fraud and perjury and encouraged marriages motivated by fear of a lawsuit instead of love," the California Legislature enacted Civil Code Section 43.5. *See Boyd v. Boyd*, 228 Cal. App. 2d 374, 377 (1964). Under Section 43.5, "[n]o cause of action arises for . . . breach of promise of marriage." Cal. Civ. Code § 43.5(d). But Section 43.5 encompasses more than just claims for breach of a promise of marriage:

> The marriage institution comprehends an array of interrelated commitments and expectations. These commitments include the usual incidents of matrimonial existence, companionship, sexual relations and the traditional distribution of domestic activities. The notion of financial support by the male is implicit in marital status. Even in this era of working wives the husband has ultimate economic responsibility. In outlawing breach of promise actions, section 43.5, subdivision (d), aims at lawsuits in which one party or the other seeks

United States District Court<br>Northern District of California

4

financial compensation for loss of this group of expectations and commitments.

*Boyd*, 228 Cal. App. 2d at 378; *see also Askew*, 22 Cal. App. 4th at 947 ("The California anti-heart-balm statutes which long ago did away with breach of promise actions establish a public policy against litigation of the affairs of the heart.").  So, "[t]he statute creates a blanket immunization from the liability it protects unless such conduct 'breaches a duty of care *independent* of the causes of action barred therein."  *Richelle L. v. Roman Catholic Archbishop*, 106 Cal. App. 4th 257, 267 (2003) (citation omitted); *see also Smith v. Pust*, 19 Cal. App. 4th 263, 270 (1993) (explaining "two requirements for such an independent duty of care: (1) a genuine professional relationship must exist between the plaintiff and the defendant, and (2) the wrongful conduct must have a meaningful connection to the *purpose* of that professional relationship").

In granting Defendant's motion for judgment on the pleadings, the Court held Section 43.5 barred Plaintiff's breach of contract, breach of implied contract, and promissory estoppel claims because Plaintiff alleged Defendant induced her to give up her home and belongings and leave her job by "assur[ing] her that he loved her, that he wanted to marry her, and that she could trust him about the financial arrangement he was offering," and when she moved in with Defendant, they "were engaged and [he] gave her a wedding ring."  (Dkt. No. 20 at 4 (citing Dkt. No. 1-1 ¶¶ 8-9).) *See Askew*, 22 Cal. App. 4th at 954 (noting Section 43.5 "obviously prohibited (and still prohibits) lawsuits seeking contract damages for the emotional pain of a broken engagement").

Plaintiff has amended her complaint to omit the allegations the Court previously relied upon to find Section 43.5 barred her contract claims, specifically Defendant's desire to marry Plaintiff and the parties' engagement.[3]  But, even as amended, Plaintiff's claims still fall within the scope of Section 43.5's prohibition.  Although Plaintiff no longer alleges she and Defendant planned to marry, she still alleges she and Defendant were in a "romantic, intimate, and personal relationship," and she ultimately agreed to his offer "[b]ased upon his representations," including his "assur[ance] [] that he loved her . . . and that she could trust him."  (Dkt. No. 21 ¶¶ 5, 8.)  *See*

---

[3] In filing her amended complaint, Plaintiff did not comply with the Court's standing orders, which require parties to "concurrently file a redlined or highlighted version comparing the amended pleading to the prior operative pleading."  *See* Civ. Standing Order for District Judge Jacqueline Scott Corley at 2 (rev. Jan. 21, 2025).

United States District Court
Northern District of California

*Askew*, 22 Cal. App. 4th at 947 ("[S]tatements of love . . . are not legally cognizable, whether made before or after marriage."). And Plaintiff alleges Defendant breached his promise to provide property and support in return for her giving up her home and job to care for his son and home. Given the parties' "romantic, intimate, and personal relationship," (Dkt. No. 21 ¶ 5), their agreement reflects the typical "commitments and expectations" of the "marriage institution," including "companionship, sexual relations, [] the traditional distribution of domestic activities, . . . [and] financial support." *See Boyd*, 228 Cal. App. 2d at 378. So, Section 43.5 bars Plaintiff's breach of contract, breach of implied contract, and promissory estoppel claims. *See Estate of Bride by and through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1177-78 (9th Cir. 2024) (explaining promissory estoppel is "a subset of a theory of recovery based on a breach of contract" (quotation marks and citation omitted)).

Plaintiff argues her claim falls outside of Section 43.5 because "a person requesting that another give up employment to take on what is effectively new employment" would have a breach of contract claim, and Plaintiff "does not lose her contractual rights simply because the parties also had an intimate relationship." (Dkt. No. 26 at 5-6.) Plaintiff misunderstands the scope of Section 43.5. Section 43.5 encompasses claims for breaching promises to provide the type of support "implicit in marital status" except in specific circumstances when the parties have a "genuine professional relationship" independent of any personal relationship. *See Boyd*, 228 Cal. App. 2d at 378; *Richelle L.*, 106 Cal. App. at 267; *Smith*, 19 Cal. App. 4th at 269-70. Because Defendant's alleged broken promises are intertwined with the parties' "romantic, intimate, and personal relationship," and Plaintiff does not allege any independent professional relationship, Section 43.5 bars Plaintiff's claims.

Plaintiff also contends *Boyd v. Boyd*, 228 Cal. App. 2d 374 (1964), is inapplicable because "[a]ll of the Boyd[] court's analysis focused on a situation where parties are married, and it is clear from the language of this antiquated case that the court was struggling with the concept of what rights a wife has after the termination of the marriage." (Dkt. No. 26 at 5.) But *Boyd* explicitly rejected a narrower construction of Section 43.5 and instead held Section 43.5's prohibition "may embrace any class of damage suit originating from the breach of marital vows made before or as

United States District Court
Northern District of California

part of the marriage contract," as well as suits originating from the breach of promises "to fulfill matrimonial obligations and expectations." *Boyd*, 228 Cal. App. 2d at 377; *see also id.* at 379 ("[A] plaintiff may not, by selecting frustrated economic expectations as the sole item of damage, escape the bar of the statute."). And although Plaintiff argues *Boyd*'s holding "[a] husband's promise of support is an implicit term of the marriage relationship" is antiquated, *id.* at 379, *Boyd* and Section 43.5 remain California law.

So, drawing all reasonable inferences from the allegations in Plaintiff's favor, Section 43.5 bars Plaintiff's breach of contract, breach of implied contract, and promissory estoppel claims.

### B.  *Marvin* Claims

Plaintiff argues her amended complaint plausibly alleges contract claims under *Marvin v. Marvin*, 18 Cal. 3d 660 (1976), which creates an exception to Section 43.5 for "pooling and support agreements not part of or accompanied by a promise of marriage." *Id.* at 674. Recovery under *Marvin* "requires a showing of a stable and significant relationship arising out of cohabitation." *See Bergen v. Wood*, 14 Cal. App. 4th 854, 857 (1993); *see also Cochran v. Cochran*, 89 Cal. App. 4th 283, 291 (2001) (refusing to decide whether recovery always requires cohabitation). Courts consider several factors when determining whether a relationship is sufficiently stable or significant to support a *Marvin* claim, including (1) the length of the relationship, (2) whether the parties raised children together, (3) whether they held themselves out to the world as married, and (4) whether they jointly owned property and pooled assets. *See Cochran*, 89 Cal. App. 4th at 291-92.

The Court held Plaintiff's initial complaint did not plausibly allege a "sufficiently stable or significant" relationship with Defendant "to warrant recovery under *Marvin*." (Dkt. No. 20 at 6.) Plaintiff had alleged "[t]heir relationship lasted less than one year, from fall 2021 through July 2022, and they only cohabitated between March 2022 and July 2022," which was far less than the length of relationships underlying successful *Marvin* claims. (*Id.*) Plaintiff also had not alleged she and Defendant "held themselves out as married, jointly owned property, or pooled assets." (*Id.*)

Plaintiff's amended complaint still fails to state a *Marvin* claim. As an initial matter,

United States District Court
Northern District of California

Plaintiff's allegation "[t]he relationship was stable, as the parties lived together as committed partners" is conclusory and therefore unavailing. (Dkt. No. 21 ¶ 10.) *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." (cleaned up)). Even if Plaintiff and Defendant "lived together every single day and night continuously" while cohabitating, (Dkt. No. 21 ¶ 10), the parties' entire relationship still lasted less than a year. *Cf. Cochran*, 89 Cal. App. 4th at 291 (finding 17-year relationship sufficient); *Alderson v. Alderson*, 180 Cal. App. 3d 450, 461 (1986) (finding 12-year relationship sufficient); *see also Smith v. Carr*, No. CV 12-3251 CAS (JCGx), 2012 WL 2343305, at *6 (C.D. Cal. June 18, 2012) (finding three-year relationship insufficient). And, even if Defendant once "referred to [Plaintiff] and her son as his wife and son in official correspondence," (Dkt. No. 21 ¶ 9), Plaintiff does not allege any jointly owned property or pooled assets. *Cf. Cochran*, 89 Cal. App. 4th at 291-92 (noting parties "held themselves out to the world as husband and wife" *and* jointly owned home); *Alderson*, 180 Cal. App. 3d at 461 (noting parties "held themselves out . . . as husband and wife" *and* "pooled their financial resources and then drew upon the same to purchase" properties with joint title). Ultimately, while Plaintiff contends whether the parties had a significant and stable relationship should remain a question for the trier of fact, Plaintiff cites no case in which a court has found similar allegations sufficient to state a *Marvin* claim.

So, Plaintiff does not plausibly allege breach of contract under a *Marvin* theory. The Court therefore dismisses Plaintiff's breach of contract, breach of implied contract, and promissory estoppel claims.

## II.    NEGLIGENT MISREPRESENTATION CLAIM (CAUSE OF ACTION V)

The Court previously dismissed Plaintiff's negligent misrepresentation claim because it was barred by California Civil Code Section 43.4. (Dkt. No. 20 at 4-5.) Defendant now moves to dismiss Plaintiff's amended negligent misrepresentation claim as barred by Section 43.4 and as insufficiently pled. However, Plaintiff's opposition brief argues "the motion must be denied except as to the negligent misrepresentation claim," and "does not present argument" on the

negligent misrepresentation claim.  (Dkt. No. 26 at 3, 8.)  So, as Plaintiff does not oppose, the Court grants Defendant's motion to dismiss the negligent misrepresentation claim.

## III.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM (CAUSE OF ACTION VI)

An intentional infliction of emotional distress ("IIED") claim requires: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (quotation marks and citation omitted).  "The defendant must have engaged in conduct intended to inflict injury or engaged in with the realization that injury will result," *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991) (quotation marks and citation omitted), or, as to reckless disregard, "devoted little or no thought to probable consequences of his conduct," *KOVR-TV, Inc. v. Superior Court*, 31 Cal. App. 4th 1023, 1031-32 (1995).

The Court previously dismissed Plaintiff's IIED claim because she did not include any facts supporting allegations of severe emotional and mental distress or Defendant's intent. Because Plaintiff's amended complaint alleges new facts regarding her emotional distress, Defendant now moves to dismiss the IIED claim because Plaintiff alleges no facts regarding Defendant's intent.  As an initial matter, Plaintiff's argument plausible allegations of Defendant's "obviously intentional acts" are sufficient is unavailing.  (Dkt. No. 21 ¶ 50; Dkt. No. 26 at 8.) Instead, an IIED claim requires allegations of a defendant's acting "with the intention of causing, or reckless disregard of the probability of causing, emotional distress."  *See Hughes*, 46 Cal. 4th at 1050; *see also Shabazz v. Fuentes*, No. 2:25-CV-02811-DJC-CSK PS, 2025 WL 3443105, at *3 (E.D. Cal. Dec. 1, 2025) (considering allegation the defendants' actions were "intentional" insufficient and dismissing complaint for "fail[ing] to allege intent to cause extreme emotional distress").  And Plaintiff's allegations Defendant took certain steps "in order to punish Plaintiff" or because "he wanted to be sure she was safe" undermine her allegation Defendant "intended to cause [her] emotional distress." (*Id.* ¶¶ 11, 49.)  *See Christensen*, 54 Cal. 3d at 903 (requiring

United States District Court
Northern District of California

defendant "intended to inflict injury").

However, Plaintiff alleges Defendant's "defrauding Plaintiff, converting community and partnership assets, refusing to take actions to preserve the partnership and community assets in order to punish Plaintiff, ousting the Plaintiff, deceptively getting her to give up her job, condominium and apartment, abusing her during her cancer treatment, [and] hacking her phone" led Plaintiff to become "severely depressed from [] stress" and "suicidal." (Dkt. No. 21 ¶¶ 49, 51.) In light of these factual allegations, Plaintiff's complaint creates a plausible inference Defendant "devoted little or no thought to probable consequences of his conduct" and therefore acted with reckless disregard. *See KOVR-TV, Inc.*, 31 Cal. App. at 1031-32.

So, the Court denies Defendant's motion to dismiss Plaintiff's IIED claim.

**CONCLUSION**

For the reasons stated above, the Court DENIES Defendant's motion to dismiss Plaintiff's intentional infliction of emotional distress claim and GRANTS Defendant's motion to dismiss Plaintiff's breach of contract, breach of implied contract, promissory estoppel, and negligent misrepresentation claims without leave to amend. As to Plaintiff's breach of contract, breach of implied contract, and promissory estoppel claims, Plaintiff's amended complaint demonstrates she cannot allege new facts to avoid Section 43.5's bar. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ("[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." (quotation marks and citation omitted)); *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809-10 (9th Cir. 1988) ("Repeated failure to cure deficiencies by amendments previously allowed is [a] valid reason for a district court to deny a party leave to amend."); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir. 1987) ("[The] district court's discretion over amendments is especially broad where the court has already given a plaintiff one or more opportunities to amend his complaint."). And Plaintiff did not oppose Defendant's motion to dismiss her negligent misrepresentation claim. *See Bulan v. JPMorgan Chase Bank*, No. C-10-05952 EDL, 2011 WL 13266527, at \*7 (N.D. Cal. Apr. 6, 2011) ("Because Plaintiffs failed to oppose the motion to dismiss, the dismissal should be without leave to amend.").

The Court sets an initial case management conference for **February 25, 2026 at 2:00 p.m.** via Zoom video. A joint case management conference statement, with a proposed schedule through trial, is due one week in advance.

This Order disposes of Docket No. 25.

**IT IS SO ORDERED.**

Dated: January 26, 2026

_____
JACQUELINE SCOTT CORLEY
United States District Judge